UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Ronald Robinson,

    Plaintiff,

        v.                              Case Number: 1:21cv253

                                        Judge Michael R. Barrett

City of Cincinnati, et al.,

    Defendants,

**ORDER**

This matter is before the Court upon Defendants City of Cincinnati and the Cincinnati Health Department's Motion for Judgment on the Pleadings. (Doc. 7). Plaintiff has filed a Response in Opposition (Doc. 8) and Defendants filed a Reply (Doc. 10).

**I.    BACKGROUND**

While Plaintiff Ronald Robinson was serving on the City of Cincinnati Health Department's Board, he was encouraged by the City's Health Commissioner and other officials to apply for an opening as Director of Finance for the Cincinnati Health Department. (Doc. 2, ¶¶ 1-2). Robinson applied for the position. (Id., ¶ 17). Robinson was later advised by the City Solicitor's Office that he would need to resign from his position as a member of the Health Department Board in order to proceed with his application. (Id., ¶ 20). Robinson resigned from the Board. (Id., ¶ 21). After several rounds of interviews, Robinson was rated as the top candidate. (Id., ¶ 23). The Board offered him the position and authorized his hire. (Id., ¶ 25-28). Robinson resigned from his previous job and began working as Director of Finance. (Id., ¶ 29).

Approximately three months into his tenure, a taxpayer challenged Robinson's appointment based on a conflict of interest and filed a taxpayer lawsuit in the Hamilton County Court of Common Pleas. (Id., ¶¶ 30-31). In defending against the lawsuit, the City maintained that it was unaware that Robinson applied for the position while he was serving as a member of the Health Department's Board; and in effect had been "hoodwinked" by Robinson. (Id., ¶ 32). The court determined that Robinson's hire was unlawful and enjoined the City from employing Robinson. (Id., ¶ 33). That same day, the City notified Robinson that he was being terminated immediately. (Id., ¶ 34). Robinson requested that the City afford him a public hearing to clear his name of the stigma that he acted dishonestly or deceitfully. (Id., ¶ 36). The City rejected this request for a hearing. (Id.)

Robinson has brought the following claims against the City of Cincinnati and the Cincinnati Health Department: (1) promissory estoppel; and (2) violation of due process. (Doc. 2). Robinson's claims were originally filed in the Hamilton County Court of Common Pleas, but were removed to this Court. (Doc. 1).

II. **ANALYSIS**

A. **Motion for Judgment on the Pleadings**

The standard of review for a Rule 12(c) motion is generally the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)). Accordingly, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of

2

the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007)). The factual allegations in the complaint need to be sufficient to give notice to the defendant as to what claims are alleged, and the plaintiff must plead "sufficient factual matter" to render the legal claim plausible, *i.e.*, more than merely possible. *Id*. (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-950 (2009)). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 129 S.Ct. at 1949 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 556 (2007)).

"If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007) (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999)); *see also Waters v. Drake*, 105 F. Supp. 3d 780, 788-89 (S.D. Ohio 2015) ("While the allegations in the complaint are the primary focus in assessing a Rule 12(c) motion, 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint[ ] also may be taken into account.'") (quoting *Barany–Snyder v. Weiner*, 539 F.3d 327, 332 (6th Cir. 2008)).

3

### B. City of Cincinnati Health Department

Defendants argue that the claims against the Cincinnati Health Department should be dismissed because it lacks the capacity to sue or be sued. Robinson does not dispute that the Health Department should be dismissed from these proceedings. *Accord Saint Torrance v. Firstar*, 529 F. Supp. 2d 836, 850 (S.D. Ohio 2007) ("The Cincinnati Water Works, as a department of the City of Cincinnati, a municipal corporation, is not *sui juris* and cannot be sued absent statutory authority.") (citing *City of Cuyahoga Falls v. Robart*, 58 Ohio St.3d 1, 567 N.E.2d 987, 992 (Ohio 1991)). Therefore, the claims Defendant Cincinnati Health Department are DISMISSED.

### C. Promissory estoppel

The City argues that Robinson's promissory estoppel claim should be dismissed because the principle of estoppel does not apply against a state or agency in the exercise of a governmental function and, alternatively, Robinson has not sufficiently alleged facts to overcome the presumption that he was an at-will employee.

Robinson responds that the City misinterprets his promissory estoppel claim and therefore it is not necessary to address the termination of his employment as an at-will employee. (Doc. 8, PAGEID 151). Robinson explains that his claim is not based on his termination, but is instead based on the City's promise that he was being awarded the Director of Finance position which induced him to leave his previous employment.

Regardless of how he frames his claim, Robinson's claim is subject to Ohio's employment-at-will doctrine:

> In general, under Ohio's employment-at-will doctrine, "the employment relationship between employer and employee is terminable at the will of

4

either; thus, an employee is subject to discharge by an employer at any time, even without cause." *Wright v. Honda of Am. Mfg., Inc.* (1995), 73 Ohio St.3d 571, 574, 653 N.E.2d 381, 384. However, the Ohio Supreme Court has established two exceptions to the employment-at-will doctrine: (1) the existence of implied or express contractual provisions that alter the terms of discharge and (2) the existence of promissory estoppel where representations or promises have been made to an employee. *Id*., citing *Mers v. Dispatch Printing Co*. (1985), 19 Ohio St.3d 100, 104–105, 19 OBR 261, 264–265, 483 N.E.2d 150, 154-155.

*Clark v. Collins Bus Corp*., 136 Ohio App. 3d 448, 451, 736 N.E.2d 970, 972–73 (Ohio Ct. App. 2000). To establish the promissory estoppel exception to at-will employment, the plaintiff must show: "(1) the employer made a promise clear and unambiguous in its terms to the employee, (2) the employee relied on that promise to his detriment, (3) the reliance was reasonable and foreseeable, and (4) the employee was injured by the reliance." *Nealon v. Cleveland*, 140 Ohio App. 3d 101, 109, 746 N.E.2d 694, 699 (Ohio Ct. App. 2000) (citing *Cohen & Co. v. Messina*, 24 Ohio App.3d 22, 26, 24 OBR 44, 48–49, 492 N.E.2d 867, 871–872 (Ohio Ct. App. 1985)).

The Court notes that Robinson's willingness to give up his secure employment in reliance upon the City's representations would establish the second element. *See Casale v. Nationwide Children's Hosp*., 682 F. App'x 359, 366 (6th Cir. 2017) (citing *Patrick v. Painesville Commercial Props., Inc*., 99 Ohio App.3d 360, 650 N.E.2d 927, 931 (Ohio Ct. App. 1994)). However, Robinson has not alleged sufficient facts which would support the first element. As one Ohio court has explained:

> In the absence of a "specific promise of continued employment," a promise of future benefits or opportunities does not support a promissory estoppel exception to the employment-at-will doctrine. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, paragraph two of the syllabus. Other Ohio courts of appeals have likewise found a clear, unambiguous promise to be indispensable to a finding of promissory

5

> estoppel in employment-at-will cases. *See Ekunsumi v. Cincinnati Restoration, Inc.* (1997), 120 Ohio App.3d 557, 562, 698 N.E.2d 503, 506; *Healey v. Republic Powdered Metals, Inc.* (1992), 85 Ohio App.3d 281, 284, 619 N.E.2d 1035, 1036.

*Clark v. Collins Bus Corp.*, 136 Ohio App. 3d 448, 452–53, 736 N.E.2d 970, 974 (Ohio Ct. App. 2000); *see also Pertz v. Edward J. DeBartolo Corp.*, 188 F.3d 508 (6th Cir. 1999) ("Ohio courts routinely find employer promises of continued secure employment, designed to dissuade an employee from seeking or accepting a position with a different company, both definite and worthy of reasonable reliance.") (citing cases). Here, Robinson has not alleged any facts in his Complaint which could be construed as a specific promise of continued employment. *Accord Stewart v. Everyware Glob., Inc.*, 68 F. Supp. 3d 759, 767–68 (S.D. Ohio 2014) (dismissing promissory estoppel claim on motion to dismiss where "[t]he complaint fails to allege sufficient facts to show that a clear, specific and unambiguous promise of continued employment was made to plaintiff by defendants, an essential element of the promissory estoppel claim."). Therefore, the City is entitled to judgment as to Robinson's claim of promissory estoppel.[1]

### D. Due process

The Fourteenth Amendment's Due Process Clause forbids states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989). A deprivation of any of those interests "must

---

[1] Accordingly, the Court finds it unnecessary to reach the City's alternative argument that it is immune from Robinson's promissory estoppel claim.

be accompanied by notice and an opportunity to be heard to refute any charges against that person." *Id*. Therefore, when a nontenured public employee "shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name." *Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir.1989)).

The City argues that there was no violation of Robinson's due process rights because he was not entitled to a name-clearing hearing; and even if he was entitled to a hearing, Robinson's due process rights were satisfied through his participation in two civil lawsuits and an investigation by the Ohio Ethics Commission.

The Sixth Circuit has established a five-factor test to determine whether a plaintiff has been deprived of a liberty interest and is entitled to a name-clearing hearing:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance.... Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Ludwig v. Board of Trustees*, 123 F.3d 404, 410 (6th Cir. 1997) (internal citations omitted).

The City maintains that Robinson has not adequately alleged statements which were "stigmatizing." In response, Robinson requests leave to file an amended complaint to provided additional factual detail. Such a request is not proper. Instead, Robinson must file a separate motion for leave which states with particularity the grounds for the motion. *See* Fed.R.Civ.P. 7(b)(1)(B).

7

In any event, the Court concludes that allowing Robinson leave to file an amended complaint would be futile because any due process requirement that Robinson be afforded a name-clearing hearing has been satisfied. As one district court has explained:

> courts have held that post-termination name-clearing hearings need not be held for employees who have been acquitted of alleged criminal conduct following jury trials, *Graham v. City of Philadelphia*, 402 F.3d 139, 144 (3d Cir. 2005), *Seeley v. Board of County Commissioners for La Plata County, Colorado*, 654 F.Supp. 1309 (D.Colo. 1987), employees who do not dispute the substantial truth of the allegations made against them, *Codd*, 429 U.S. at 627-28, and employees who have been given pre-termination hearings to address the allegedly false allegations against them, *Liotta v. Borough of Springdale*, 985 F.2d 119 (3d Cir.1993).

*Hoffman v. Kelz*, No. 06-C-153-C, 2007 WL 675741, at *8 (W.D. Wis. Feb. 20, 2007).

This Court has recognized the same:

> in *Graham v. City of Philadelphia*, 402 F.3d 139 (3d Cir. 2005), the plaintiff police officer was terminated from his employment following his arrest for sex with a minor. Following a criminal trial at which he was acquitted, the officer filed suit against his employer alleging deprivation of a liberty interest due to the employer's failure to hold a name-clearing hearing. The Third Circuit determined that the employee's "criminal trial negate[d] his entitlement to a name-clearing hearing because that trial satisfied the requirements of the Due Process Clause." *Id*. at 144. In so concluding, the Court found that the employee's "criminal trial provided him with more than adequate opportunity to refute the allegations asserted against him." *Id*. Other courts have also concluded that various types of post-deprivation hearings were sufficient to meet the name-clearing hearing requirement. *See e.g.*, *Seeley v. Board of Commis*, 654 F.Supp. 1309, 1312 (D.Colo. Mar. 9, 1987) (criminal jury trial gave plaintiff the required opportunity to clear his name); *Hoffman v. Kelz*, No. 06–C–153–C, 2007 U.S. Dist. LEXIS 12146, 2007 WL 675741 (W.D.Wis. Feb. 20, 2007) (fact-finding hearing before Village Board provided "ample opportunity" to address charges against the plaintiff and therefore employer was entitled to summary judgment on plaintiff's claim for failure to provide name-clearing hearing).

*Claborn v. Montgomery*, No. 2:11-CV-679, 2012 WL 4056845, at *5 (S.D. Ohio Sept. 14, 2012); *see also McCormick v. District of Columbia*, 899 F.Supp.2d 59, 67-69 (D. D.C.

2012) (post-termination administrative procedures provided for public employees satisfied the due process requirements of a name-clearing hearing); *Dimucci v. Pennsylvania Convention Center Authority*, Case No. 08cv4810, 2010 WL 2640151 at *5 (E.D.Pa. June 29, 2010) (grievance hearing on charges of vandalism served as an adequate substitute for name-clearing hearing for purposes of due process; plaintiffs were represented at the hearing and evidence was presented on their behalf such that they had the opportunity "to tell their side of the story").

Here, the City's hiring of Robinson as the Director of Finance was the subject of hearings in three different proceedings. The first proceeding was the taxpayer lawsuit filed in the Hamilton County Court of Common Pleas, *State ex rel. Gould v. Bd. of Health of the City of Cincinnati*, Case No. A1903715. According to the public docket in the case, Judge Robert Ruehlman held two hearings on the motion for injunctive relief filed by the relator on behalf of the taxpayers. (Doc. 7-1, PAGEID 69, 71). Judge Ruelman concluded that Robinson's application and subsequent hiring violated Ohio Revised Code § 2921.42, which provides that a public official may not "[a]uthorize, or employ the authority or influence of [his] office to secure authorization of any public contract in which the public official, a member of the public official's family, or any of the public official's business associates has an interest." (Doc. 7-1, PAGEID 72). While Robinson was not a named party in the case, the record indicates that Robinson and his counsel were involved in the proceedings. In his discussion of whether to grant injunctive relief to the taxpayers based upon irreparable harm:

> In this instance, the harm to the taxpayers is clear: Mr. Robinson has received more than $50,000 in salary under an unlawful employment

> relationship with the Board and will continue to receive such a salary without recompense to city taxpayers unless the Court halts such payments. In response to arguments made by Mr. Robinson's personal lawyer, Relator argues that because Mr. Robinson knowingly put himself in this position, he cannot legitimately claim to be harmed by the injunctive relief sought. The Court finds this argument to be well-taken.

(Doc. 7-1, PAGEID 74).

The second proceeding was a lawsuit brought by Chadrian Johnson, *Johnson v. Robinson, et al.*, Case No. No. A1905071. According to Johnson's publicly-filed complaint, Johnson was the number two candidate for the Director of Finance position when Robinson was hired. (Doc. 7-2, PAGEID 79). Johnson brought claims for civil conspiracy, tortious interference with prospective contractual relations and unjust enrichment against the City and Robinson. (Doc. 7-2, PAGEID 86-89). Robinson, through counsel, filed an answer in which he denied the allegations that he knowingly violated Ohio Revised Code § 2921.42. The public docket shows that these proceedings ended soon thereafter with a notice of dismissal with prejudice filed by counsel for Johnson.

The third proceeding was an investigation conducted by the Ohio Ethics Commission. The investigation was based on an allegation that Robinson, while still a member of the Cincinnati Board of Health, applied for the position of Director of Finance. (Doc. 7-4, PAGEID 142). The proceedings ended with a public settlement agreement signed by Robinson and the Ohio Ethics Commission. (Doc. 7-4) ("Settlement Agreement"). The Settlement Agreement states:

> Robinson maintains he was first verbally advised that he would have to resign from the Board in order to continue with the process. The City maintains Robinson was first verbally advised that he would have to resign

> from the Board in order to apply for the position. Additionally, Robinson maintains he was not told a more formal written opinion from the Solicitor's Office was being emailed to him; however, the City maintains Robinson was told a more formal written opinion had been written and would be sent to him soon. The formal written opinion was emailed to Robinson by the administrative assistant to the solicitor. Robinson maintains he did not know the administrative assistant, so he did not open the email. The written opinion stated that Robinson needed to resign from the Board prior to submitting his application but Robinson maintains that he did not see this opinion until it was sent to his attorney after the lawsuit was filed by the citizen.

(Doc. 7-4, PAGEID 143). The Settlement Agreement also states that the Commission "found that the facts support a violation of the conflict of interest provisions in RC. 102.03(D) and (E) and the public contract provision of R.C. 2921.42 of the Ohio Ethics Law because Robinson submitted an application for an open position at the Cincinnati Health Department when he was still a Cincinnati Board of Health Member, which oversees the operations of the Health Department, and he subsequently accepted the position." (Doc. 7-4, PAGEID 144). However, the Commission determined that the matter should be addressed through its settlement authority based on certain mitigation factors:

> In mitigation of any violation, Robinson is no longer employed as the Director of Finance; Robinson's fellow board members encouraged him to apply for the position because they thought he was a very qualified candidate; HR personnel for the City of Cincinnati provided to the Board the top ten applicants for the position, which included Robinson; the Board conducted seven first round interviews, which included Robinson; the Board conducted three second round interviews, which included Robinson; and after the interviews were concluded, Robinson was ranked first out of the three finalists. The City had several opportunities to halt the hiring process, including: when the City Attorney's Office was consulted after Robinson applied for the position but before he resigned from the Board; when the Board consulted with the City Attorney's Office regarding Robinson's candidacy; when the City Attorney's Office was present during the Executive Session when the Board discussed the hiring of senior leadership

11

> positions; and lastly, when the City verified Robinson's employment eligibility prior to his hiring as was stated in his offer of employment letter dated January 31, 2019. In addition, Robinson was cooperative with the investigation.

(Doc. 7-4, PAGEID 144-45). The Settlement Agreement also states:

> Per the terms of this Settlement Agreement, Robinson acknowledges that when he submitted an application for an open position at the Cincinnati Health Department when he was still a Cincinnati Board of Health Member he violated the conflict of interest provisions in RC. 102.03(D) and (E). He further acknowledges that his acceptance of the position violated the public contract provision in R.C. 2921.42 as found by Judge Ruehlman. In lieu of a referral of this matter to the local prosecuting attorney, Robinson accepts a reprimand from the Commission. Robinson agrees he will not make any public argument in defense of the acknowledgement contained in this settlement agreement by stating that he did not do anything wrong, that the facts do not support a potential violation of the Ohio Ethics Law, or that the resolution of this matter is legally or factually deficient for any reason due to the investigation or processes of the Ethics Commission.

(Doc. 7-4, PAGEID 144-45).

The Court notes that the "purpose of a name-clearing hearing is to afford the aggrieved employee an 'opportunity to be heard to refute the charges disseminated against him.'" *Quinn*, 293 F.3d at 321 (quoting *Ludwig v. Bd. of Trustees*, 123 F.3d 404, 410 (6th Cir.1997). The hearing "need only provide an opportunity to clear one's name." *Id*. While Robinson has not had a formal name-clearing hearing, he has had the opportunity to be heard and respond to the stigmatizing statements. The filings in the civil proceedings in the Hamilton County Common Pleas were available to the public and the hearings on the injunction motion were presumptively open to the public. Robinson was represented by counsel in these proceedings. In the Ohio Ethics Commission investigation, Robinson was able to submit favorable evidence, and was successful in establishing that "[t]he City had several opportunities to halt the hiring process, including:

12

when the City Attorney's Office was consulted after Robinson applied for the position but before he resigned from the Board; when the Board consulted with the City Attorney's Office regarding Robinson's candidacy; when the City Attorney's Office was present during the Executive Session when the Board discussed the hiring of senior leadership positions; and lastly, when the City verified Robinson's employment eligibility prior to his hiring as was stated in his offer of employment letter dated January 31, 2019." (Doc. 7-4, PAGEID 144-45). Robinson has not raised any deficiencies regarding the constitutional adequacy of any of these proceedings, such as lack of notice or other procedural safeguards. Therefore, the proceedings in the Hamilton County Court of Common Pleas and before the Ohio Ethics Commission provided Robinson constitutionally sufficient due process such that another name-clearing hearing is not required. *Accord Welling v. Owens State Cmty. Coll.*, 535 F. Supp. 2d 886, 891 (N.D. Ohio 2008) ("Plaintiff, if deprived of a liberty interest in the sullying of his reputation by Defendants, is entitled to one name-clearing hearing, a singular bite at the apple that Plaintiff has already had. The Court will not sacrifice efficiency, economy, and fairness and double up on the process due Plaintiff."); *Bowles v. Macomb Cmty. Coll.*, Case No. 20-13175, 2022 WL 1178504, at *4, n.5 (E.D. Mich. Apr. 20, 2022) ("To the extent that Plaintiff again attempts to argue more than one state entity must provide him with a name-clearing hearing for publication of the Investigative Summary, he has once again provided no authority to support his position. . . . The court is not convinced that a singular deprivation of a property or liberty interest warrants 'doubling up' the amount of process due.").

13

Based on the foregoing, Defendants City of Cincinnati and the Cincinnati Health Department's Motion for Judgment on the Pleadings (Doc. 7) is **GRANTED**.   There being no additional matters pending for disposition in this matter, this matter is **CLOSED** and **TERMINATED** from the active docket of this Court.

    **IT IS SO ORDERED.**

                                    */s/ Michael R. Barrett*
                                Michael R. Barrett
                                United States District Judge